Thank you. Mr. Morrison, you may proceed. Thank you, Judge. May it please the court, my name is John Morrison. I'm counsel for the appellant and plaintiff below Mark Biegler. I'd like to reserve three minutes for rebuttal. This is a negligence case against a managing general agent for failure to exercise reasonable care in the placement of surplus lines insurance coverage. G.M.I. placed primary liability and property damage coverage with a company that was unwilling to provide primary coverage. When claims came in and the insurer discovered it was primary, it canceled the coverage midterm. G.M.I.'s negligence created a fiasco for Biegler's anchor client and consequently he lost their business. There was indisputably confusion that led to the cancellation of coverage here. The complaint alleges that the confusion was caused by the negligence of G.M.I. and asserted four well-pledged negligence claims. The district court concluded that all of these claims failed because the policy did in fact provide primary coverage. Biegler respectfully submits that the duties of G.M.I. were broader than that and that the 12B6 dismissals should therefore be reversed. The complaint alleges several negligence claims against G.M.I. One, general negligence. Failure to place coverage that was quote acceptable to end quote both the insured and the insurer and failure to exercise reasonable care in communicating the nature of the coverage to the carrier. That's count one in paragraphs 29 and 30 at ER 30. Two, negligent misrepresentation. That is supplying Biegler with false information that USMC United Specialty was willing to quote willing to end quote provide primary coverage when they were not. That's count three negligent misrepresentation. Paragraph 38. Three, breach of the duty to procure the coverage requested. And in this case that consists of failing to place the coverage with a carrier that was willing to cover the risk. That's count four paragraph 43. Four, negligent performance of a duty voluntarily undertaken. That is the duty that the G.M.I. representative Amy Phillips undertook specifically to place the primary coverage with a willing carrier and to meet the coverage needs of Fleet Logics. Counsel can you can you explain a little bit what your client's theory is of exactly what trouble understanding how how an insurance company can provide you know can can become a party to a contract in which they're providing insurance but they don't understand what kind of insurance it is that they're providing. So how what's your story of how this came about? Uh well first of all your honor uh I think the uh the nuances of the facts in this case um are still unknown to us because we don't know everything that happened behind behind the curtain but the complaint alleges uh substantive facts including statements made by the owner of the G.M.I. and so we have alleged several several facts on which to base the claim that the reason the insurance company didn't know what it was getting into was because of negligence of G.M.I. in its representations to USMC and United Specialty. United Specialty is the surplus lines carrier but uh USMC is their managing general agent and had the pen as they say in the insurance business and so my client um backing up to the beginning of the facts my client um had an insurance agency and Fleet Logics was a client and they were covered by Liberty Mutual in the um at the same time Liberty decided to non-renew this client the client's Fleet Logics. Fleet Logics is in the business of preparing rental cars to be re-rented again um so they contract with Hertz and Avis and so forth um and uh so my client started a new insurance agency um and Fleet Logics did not like the uh service that they were getting at Hub and so they went to another company called Crystal and Crystal went into the surplus lines market and they got a bid from Republic Vanguard uh which was a company and then they came back to they didn't like that person very well either so they came back to Mark Viegler who they had been with before and they said Mark we're really comfortable uh working with you and if you can place this coverage and get us a new insurance firm goes to market looking for that coverage he works with several colleagues and finds his way to Amy Phillips at GMI. Amy Phillips then says to him I can meet Fleet Logics coverage needs for you and the pricing needs they put the package together they go back and forth in March of 2018 for several months talking about the details and the endorsements uh the self-insured retention which is essentially like a deductible uh and uh they they agree upon all of these things and they get the the coverage issue um then when the claims start coming in uh they are turned in by Viegler to Amy Phillips at GMI who turns them into USMC and USMC says we're not primary and Amy Phillips says to Mark Viegler oh USMC says they're not primary Viegler says yes they are primary she says we'll talk to USMC so he then talked to the owner first he talked to the to the lawyer for USMC John Kolb and then Kolb said we'll talk to our owner uh Ed Murphy so he gets on the phone with Ed Murphy and goes through it Ed Murphy says well Amy Phillips misled us I guess we'll stay on the coverage for now and see how it goes and then a couple of weeks later they precipitously canceled and that's when the fiasco happened but is that is that theory really plausible because the policy itself says it's primary the premium paid is was very high uh indicating or suggesting that it was a primary policy so I mean you know I empathize with your client's plight but it seems like really the bad actor at least according to the allegations is insurance company the insurance company issued a primary policy received money for a primary policy and now it's trying to shirk its obligations so I mean I you know I don't doubt that it seems like you got wrong but I just don't see how you know there's a plausible theory that GMI is the one that was negligent here it seems like it's an over bad act by the insurance company uh your honor we are proceeding against USMC and United Specialty in Delaware uh rather than challenge the personal jurisdiction issue uh was dismissed by the trial court uh without prejudice so we refiled in Delaware and we're we're pursuing that there uh but the duties of USMC and United Specialty uh whether they were breached or not are not exclusive of the fact that GMI clearly has legal duties under Montana law and it does not sufficiently answer those uh legal questions to say that primary coverage was in fact placed Montana law recognizes that when you are doing business in Montana as GMI was and GMI is a licensed carrier in my a licensed agent in Montana as well as doing business on an extended negotiation with the Montana representative although these many of these I mean most of these causes of action are uh also recognized in Pennsylvania where GMI is based and many other states but GMI had duties a managing general agent has duties now let's just say hypothetically we get to a point in the USMC United Specialty case where they say we think USMC and United Specialty is not liable because they were misled by an independent managing general agent Amy Phillips at GMI at that point if GMI has been released from the case then then my client has no remedy at all uh and and so that's just one example of uh why it's important to hold GMI to its duties but but beyond that just to be clear about there's there's a there's a written document right that's the policy that's signed by somebody at USMC maybe Murphy or I assume someone at USMC must have signed the policy that they agree to it and your what was was that document written by GMI like who actually drafted the document that USMC signed when they agreed to provide coverage well so the the document is I mean the documents are probably written by uh the by ISO the insurance services office you know but they're assembled uh by various insurance people and that's one of the things we haven't had a chance through discovery to explore yet but you have a commercial general liability policy here and then you have a a hired non-owned auto endorsement that goes on that which is the key endorsement that covers the liability for accidents that happens while they're doing what they do with the rental cars then they have a a primary non-contributory endorsement that says that's to have primary coverage in your contract with Hertz and Avis then this is primary coverage which was true and then there's a self-insured retention endorsement which specifies that the coverage attaches at the ten thousand dollar SIR point and who cobbled together these different documents into the policy package is something that we haven't had a chance to explore yet but I ask oh sorry uh judge I'm sorry I didn't mean to interrupt you but just just to be your theory is that somebody at GMI put together something that provides for primary coverage and told USMC this is secondary coverage and then USMC presumably agreed to that signed it without without actually reading the document is that essentially what you think must have happened I mean I'm having trouble seeing how this how this could have come about consistent with your view other than USMC just not reading what the policy actually I think a fact finder could conclude that the way this CGL policy was stuck together with these various endorsements um combined with representations by GMI that USMC says they made created a kind of a confusion for USMC that led them reasonably to think that they were excess counsel which way does it cut the fact that United actually paid for a year they accepted the liability for a year what what are we to infer from that or to deduce from that as a matter of law well first of all your honor they did not accept liability for a year they paid claims for about two months and they were bound to pay those the coverage but what they did was they precipitously canceled they initially told my client well I guess you're right we'll stay on this but then two weeks later they issued a 10-day notice which was not a lawful notice but nonetheless it was then amended to a 20-day and then a 30-day but in July so this was bound in at the end of April and in July they canceled and so that created a chaos but in terms of your claim against GMI what are we to make of the fact that United in fact did pay those claims on the assumption at at that time it was a primary policy the damage to my client did not come from non-payment of claims the damage to my client came from a precipitous midterm cancellation that was as we allege in our complaint the consequence of GMI's negligence in the transaction and the duties of GMI are recognized in multiple cases in Montana Montana recognizes that there's a general professional negligence standard of care excuse me I noticed that I'm down to 25 seconds and so I better stop at this time to reserve time for rebuttal your honors okay thank you and we'll hear from Mr. Carafelli now thank you your honor may it please the court my name is Andrew Carafelli appearing on behalf of GMI NA just going back to Judge Miller's question about who actually put or cobbled these documents together I would note that we are here today on a ruling on a motion a 12 v 6 motion based on the pleadings of allegations containing the insurance documents or parts of the insurance policy in fact it is the underwriter USNC who puts those documents together GMI has no role in those documents whatsoever in fact that's why the claims were turned over to the underwriter because they are the ones who prepared the policy and then had to make the decision whether their policy in fact covered those claims once they came in um obviously what the district court did here was look at a long series of convoluted and contradictory set of allegations and distilled them down to their bare essence and once done so in applying the applicable Montana law correctly concluded that the plaintiff had not stated a claim for relief against GMI or either negligence or misrepresentation and the facts are very simple you know the plaintiff himself admits that he reviewed the policy confirmed that it was a primary policy and in fact as Judge O'Scanlan points out USNC paid as a primary provider on the claims that came in plaintiff also if he had reviewed the policy knew that there was a cancellation or midterm cancellation provision in that policy and plaintiff is sat here today indicating or attempting to allude that this cancellation was somehow improper well the fact is that cancellation policy appears in the policy it was given proper notice there's been no allegation here that there was improper notice given nothing like that in the complaint but in the reply brief the appellant alluded to the fact that this was somehow this what he's precipitous cancellation was somehow in violation of statutory law and he cites to the California California insurance code section 660 in his reply brief what the appellant didn't do was apprise this court that there's in fact the definition section the California insurance code 660 which makes it clear that this California insurance code is not applicable to the situation whatsoever in fact the definition section of 660 little a capital b says that that this does not apply to any of the following any policy insuring more than four automobiles this was a you know rental fleet policy that we're talking about here so thus that code does not even apply here whatsoever and the gravimentor thrust of plaintiff's appeal here today really is that cancellation and again the problem with this argument is that one it was provided for in the policy plaintiff was well aware of that when he read it he didn't take issue with it at that time and concedes that the policy provided everything that he and his client had asked to do there's no allocation here that gmi in any way either participated or told usmc to cancel the policy uh for whatever reason they did they were not involved in that decision instead the argument that the appellant is trying to make here today is he wants to assess some type of a duty against gmi basically that it failed to procure a quote willing carrier this is repeated throughout the briefing in this matter the problem with this is he conceives in his reply brief that montana does not recognize any such standard of care for insurance agents or brokers moreover he doesn't cite to any jurisdiction which has ever ever recognized any such duty of care in essence what appellant's asking this court to do today is create new law or a new standard of care in the area of insurance law against insurance agents and brokers we have to ask ourselves what does that duty even mean what i think i mean i i understood his claim to be at least in part that the policy was only issued the way it was because um gmi somehow misled usmc sort of essentially tricked them into issuing the policy and you know that it seems kind of far-fetched but paragraph 20 of the complaint says you know murphy said usmc told phillips that oh murphy said he was misled by phillips at gmi that she had told usmc there was other coverage so if we if we accept that as true as i think we have to on a motion to dismiss um is it your view that that would not violate any duty uh under montana law if that's really what happened well the question would become where does that duty flow i would submit if that were in fact case fleet logic or usmc rather might have a claim against gmi for misleading it and making it out on primary claims or for purposes it didn't have to ultimately biegler here doesn't have a claim for that he has no privity to that contract it would be usmc's claim against gmi at that point in time and i mean i i i i guess the the primary i mean certainly on those facts usmc would have a but maybe i'm just repeating the question but uh you don't think there's any um there's no no duty that's violated uh when you know gmi is supposed to be you know procuring uh insurance on behalf of biegler uh and they they come back and they say look we got you this policy but they don't say you know we only got you the policy by tricking the insurance company uh into issuing it but it seems like they're violating a a duty um that they owe to uh to biegler in that scenario aren't they well this goes back to again the appellant looking for this court to create some kind of a new uh duty to provide a willing carrier um which again is not recognized uh in any jurisdiction in this country uh again this would lead down the slippery slope if you will where would that argument even stop then uh if biegler has a claim based on something that gmi supposedly told um usmc to issue a policy and again even going back again we know the policy was a primary policy and they paid out you know primary as a primary basis on those claims um so again we go back to the cancellation is what they were really talking about here which usmc clearly had a right to do under the policy and under the law uh at this juncture um you know a willing carrier under appellant's argument then uh any time a carrier let's say for example refused to renew a policy then somebody could make a claim saying oh well they weren't a willing carrier i have a claim for negligence for whatever reason because they procured a carrier who didn't renew same here somebody who canceled midterm even though they were obligated or legally entitled to do so they could bring them a claim you could take that argument even steps further and say if an insurance company denied a claim based on liability and somebody like bigler would say oh well my client doesn't like that so now i'm going to sue you for negligence because you've obtained this insurance policy and they're not a willing carrier that's the problem with this argument is that one again it's not recognized under the law and i think the lower court recognized it recognized that what biggler is trying to do is bootstrap these other claims that usmc might have against gmi to support his negligence claim but again there's no recognized duty between gmi and biggler at this point in time can we can a biegler proceed on a more narrow theory i think i find it plausible that gmi would intentionally mislead the insurer i did that just i just don't find plausible at all but is it possible to have a claim if both gmi the insurers committed negligence that is gmi uh maybe perhaps misspoke and said it was an excess coverage even though it was a primary and maybe the insurance company um accepted that at face value the person and didn't check the policy and committed error i mean is that possible to have a a more narrow negligence claim that maybe gmi misspoke here uh even though clearly the policy here is is is a primary one and and uh you know the insurer also believed uh due to its own negligence that it had subscribed to an excess coverage i don't see any type of claim that arguing is this speculative type of claim that well fleet logic you know didn't like the fact that they lost the coverage and therefore i suffered injuries because of that uh again there's no recognized duty in that regard that would give biggler such a plan you know this isn't a situation where gmi you know knew that usmc was insolvent or was you know one of these companies that never paid claims or anything along those regards in that regard so again you're asking a broker like gmi to have a crystal ball and knowing what uh usmc might do at any given point in time uh and again that's simply not the law and i don't know how people would have a claim again even if gmi misspoke somehow because again usmc wrote the policy ultimately uh on this they knew what they were writing uh they recognized it you know when they decided to pay out claims so at this point in time unless the court has any further questions uh we would just ask to submit the case on briefs and would waive our remaining time and ask the sport to affirm the low report thank you uh mr morrison uh yes your honor i don't have very much time here for rebuttal but i want to get right to the point that these statements uh without the benefit of authority that there is no basis in law for the duties we assert is simply incorrect and our briefs cite that authority in delaney the montana supreme court said that uh in a case against an insurance agent an expert witness can be used to establish the degree of prudence attention and caution the defendant must exercise in the selection of the carrier uh in al's cafe in pennsylvania which we cited consistent with appleman and couch a duty to pick an appropriate carrier carrier that is a law recognized in duty recognized in many jurisdictions in the fillinger case in montana there is a specific recognition uh that the negligent misrepresentation cause of action extends to insurance agents and so these duties are recognized and they are recognized as flowing to anyone who is a foreseeable injured party and so all of this is in our briefs the duties are well established the duty to procure and the duty voluntarily undertaken as well all of those are supported by facts here and they uh they are not satisfied simply because this coverage wound up being primary they said they were going to give us an insurance company that would meet our needs and they didn't they gave us an insurance company that did not want to meet our needs and that does not satisfy their duties thank you counsel thank both counsel for their helpful arguments today and the case just argued is submitted and that concludes our calendar for today and we are in recess thank you this this court for this session stands adjourned
judges: O'SCANNLAIN, MILLER, LEE